# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
MAY 17 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

One LG Aristo Cellular Telephone
Model Number: MS210
IMEI: 359998-08-181524-5

Case No. **19MJ2077**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. 841, 846, 952, 960, & 963 | Distribution of a Controlled Substance, Conspiracy to Distribute a Controlled Substance, Importation of a Controlled Substance, Conspiracy to Import a Controlled Substance |

The application is based on these facts:

See attached affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jeffrey Rabine, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/17/19

City and state: San Diego, California

Michael S. Berg, United States Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

IN THE MATTER OF THE SEARCH OF:

(1) **LG Aristo Cellular Telephone**
 **Model Number: MS210**
 **IMEI: 359998-08-181524-5**

(2) **One-Touch Cellular Telephone**
 **Model Number: 7040A**
 **IMEI: 013826004207331**

) Case Number:
)
) AFFIDAVIT OF SPECIAL
) AGENT JEFFREY RABINE
) IN SUPPORT OF SEARCH
) WARRANT
)
)
)
)
)

## AFFIDAVIT

I, Jeffrey Rabine, Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, having been duly sworn, depose and state as follows:

### INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by Special Agents of the Department of Homeland Security, Homeland Security Investigations, for the following target property: two cellular telephones seized on December 2, 2018, from MARIA DEL CARMEN BECERRA CHACON ("BECERRA CHACON"), at the Otay Mesa, CA Port of Entry. The cellular telephones are described as follows: (1) one LG Aristo cellular telephone, model number MS210, IMEI number 359998-08-181524-5 ("**Subject Telephone #1**") and (2) one One-Touch cellular telephone, model number 7040A, IMEI number 013826004207331 ("**Subject Telephone #2**").

2. **Subject Telephone #1** and **Subject Telephone #2** were seized from

1

BECERRA CHACON when Customs and Border Protection Officers ("CBPOs") encountered BECERRA CHACON at the Otay Mesa, California Port of Entry on December 2, 2018. BECERRA CHACON was the driver and sole occupant of 1997 Jeep Grand Cherokee. Upon inspection of the vehicle, CBPOs discovered 79 packages of methamphetamine, totaling approximately 42.62 kilograms (93.76 pounds), concealed in the vehicle's door paneling, under and behind the rear seat cushions, as well as inside a spare tire. It is believed that **Subject Telephone #1** and **Subject Telephone #2** were used by BECERRA CHACON to communicate with co-conspirators during the drug smuggling event. Defendant has been charged with importation of a controlled substance (methamphetamine) in the Southern District of California. Probable cause exists to believe that **Subject Telephone #1** and **Subject Telephone #2** contain evidence relating to violations of Title 21, United States Code Sections 841, 846, 952, 960, and 963. **Subject Telephone #1** and **Subject Telephone #2** is currently in HSI possession at 880 Front Street, San Diego, CA 92101.

3. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I believe the items to be seized set forth in Attachment B (incorporated herein) will be found in the item to be searched as described in Attachment A (incorporated herein). These items may be or lead to: (1) evidence of the existence of drug trafficking in violation of Title 21, United States Code Sections 841, 846, 952, 960, and 963; and (2) property designed or intended for use, or which is or has been used as a means of committing criminal offenses. Because this affidavit is made for the limited purpose of obtaining a search warrant for **Subject Telephone #1** and **Subject Telephone #2**, it does not contain all the information known by me or other federal agents regarding this

investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

4. I am a Special Agent and currently employed with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"). I have held my current position with HSI since July 2017. I am a graduate of the Criminal Investigator Training Program, and the Immigration and Customs Enforcement Special Agent Training Program at the Federal Law Enforcement Training Center ("FLETC"). During the course of my training at FLETC, I learned fundamentals of how to conduct criminal investigations including, but not limited to, gathering of evidence, preservation of a crime scene, and use of electronic evidence – all in relation to violations of the United States Code.

5. I hold a Bachelor's Degree in Criminal Justice from National University. I hold a Master of Public Administration Degree from American Military University. I am a graduate of the United States Border Patrol Training Academy and I was employed as a United States Border Patrol Agent from March 1997 – April 2002. I was employed as a Federal Air Marshal Service from April 2002 – July 2004. I am a graduate of the San Diego Regional Public Safety Training Institute Police Academy and I was employed as a Police Officer with the San Diego Community College Police Department from July 2002 – July 2017. I have been employed by Homeland Security Investigations as a Criminal Investigator since July 2017. I have attended several advanced training classes including multiple courses on criminal contraband smuggling.

6. Currently, I am assigned to a Contraband Smuggling Group in San

3

Ysidro, California. I primarily investigate violations of the United States Code that stem from the International border between Mexico and the United States, including narcotics smuggling. I have participated in investigating various drug trafficking organizations that are involved in the acquisition, importation, transportation, and distribution of controlled substances into and through the Southern District of California. I have spoken with other agents with extensive experience in narcotics smuggling investigations.

7. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers believe that cellular telephones provide greater insulation and protection against court-ordered wiretaps, and they believe in the inability of law enforcement personnel to simultaneously track the originating and destination telephone numbers of calls placed to and from their cellular telephones.

    c. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    d. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

  e. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

  f. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

  8. Based upon my training and experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

  a. tending to identify attempts to import methamphetamine or some other controlled substance from Mexico into the United States;

  b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of methamphetamine or some other controlled substance from Mexico into the United States;

  c. tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine or some other controlled

5

substance from Mexico into the United States;

      d.    tending to identify travel to or presence at locations involved in the smuggling of methamphetamine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

      e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

      f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

9.    On December 2, 2018, at approximately 10:00 a.m., BECERRA CHACON applied for admission into the United States from Mexico at the Otay Mesa, California Port-of-entry. BECERRA CHACON was the driver and sole occupant of a 1997 Jeep Grand Cherokee bearing Baja California, Mexico license plate number AG2694A ("the vehicle"). A United States Customs and Border Protection Officer ("CBPO") conducting pre-primary inspections observed BECERRA CHACON avoid eye contact and saw her hands were shaking while she handed the officer documents. After conducting a seven-point inspection of the vehicle, CBPO received an abnormally high buster reading while inspecting the vehicle's spare tire. BECERRA CHACON and the vehicle were then sent to secondary inspection for further inspection.

10.    In secondary inspection, CBPOs ran the vehicle through the Z-portal, which showed anomalies in the vehicle's doors, rear seats, and spare tire in the rear cargo area. CBPOs searched the vehicle and found 79 packages from the vehicle's

door paneling, under and behind the rear seat cushions, and from inside the spare tire in the rear cargo area. A randomly selected package was field-tested, and it tested positive for methamphetamine. The packages collectively weighed approximately 42.62 kilograms (93.76 pounds).

11. BECERRA CHACON was arrested in violation of 21 U.S.C. § 952 & 960, Importation of Controlled Substances.

12. At the time of BECERRA CHACON arrest, CBPOs collected **Subject Telephone #1** and **Subject Telephone #2**, among other personal effects, from BECERRA CHACON.

13. Based upon my experience and investigation in this case, and others, I believe that BECERRA CHACON, as well as other persons yet unknown, were involved in an on-going conspiracy to import methamphetamine or some other prohibited narcotics and to distribute those prohibited narcotics within the United States. Based on my investigation of drug importation and distribution conspiracies, telephone contact with smugglers can begin months or weeks before drugs are loaded in the car and includes coordination on crossing the border to "burn plates" (develop a crossing history or pattern). Records checks revealed there was an alert put on the license plate utilized on BECERRA CHACON'S vehicle in October 31, 2018. The details for the alert indicate that a Ford Ranger with that same license plate had a non-factory built compartment in the rear cargo bed floor. Furthermore, records checks revealed that BECERRA CHACON was s a holder of a B1/B2 border crossing card, but had never previously crossed into the United States. BECERRA CHACON's B1/B2 border crossing card shows an issuance date of September 2018. Given these facts, I respectfully request permission to search **Subject Telephone #1** and **Subject Telephone #2** for data

7

beginning on September 1, 2018, up to and including December 2, 2018.

14. Based on my experience investigating narcotics smugglers, I also believe that BECERRA CHACON may have used **Subject Telephone #1** and **Subject Telephone #2** to coordinate with co-conspirators regarding the importation and delivery of the methamphetamine, and to otherwise further this conspiracy both inside and outside the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, email messages, messages and posts from social networking sites like facebook, pictures and other digital information are stored in the memory of cellular telephones which identify other persons involved in narcotics trafficking activities.

15. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of BECERRA CHACON and her co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, email messages, messages and posts from social networking sites like facebook, pictures and other digital information are stored in the memory of the cellular telephones described herein.

## SEARCH METHODOLOGY

16. It is not possible to determine, merely by knowing the cellular telephones make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephone and text message devices, can include cameras, can serve as personal digital assistants and have functions

8

such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

17. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The

9

personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

19. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that BECERRA CHACON used **Subject Telephone #1** and **Subject Telephone #2** to facilitate the offense of importation of a controlled substance. **Subject Telephone #1** and **Subject Telephone #2** were likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence of a crime, or property designed or intended for use, or which is or has been used as a means of committing criminal offenses of violations of Title 21, United States Code, Sections 841, 843, 952, 960, and 963.

20. I also believe that probable cause exists to believe that evidence of illegal activity committed by BECERRA CHACON continues to exist on **Subject Telephone #1** and **Subject Telephone #2**.

21. Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachment B (incorporated herein) are likely to be found in the property to be searched described in Attachment A (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with Homeland Security Investigations, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Jeffrey Rabine*
Jeffrey Rabine
Special Agent, HSI

Subscribed and sworn to before me this 17th day of May, 2019.

MICHAEL S. BERG
United States Magistrate Judge

11

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The property to be searched (**Subject Telephones #1** and **Subject Telephone #2**) in connection with an investigation of violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963, is described below:

**Subject Telephone #1**

**LG Aristo Cellular Telephone**

**Model Number: MS210**

**IMEI: 359998-08-181524-5**

**Subject Telephone #2**

**One-Touch Cellular Telephone**

**Model Number: 7040A**

**IMEI: 013826004207331**

**Subject Telephones #1** and **#2** are currently in the possession of the Homeland Security Investigations Evidence Custody Room, 880 Front Street, San Diego, CA 92101.

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of September 1, 2018, to December 2, 2018:

    a.    tending to identify attempts to import methamphetamine or some other controlled substance from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of methamphetamine or some other controlled substance from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine or some other controlled substance from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the smuggling of methamphetamine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963.**

The seizure and search of the cellular phone(s) shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for the evidence above.